NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

LEO PISZKOWSKI, BY ADAM PISZKOWSKI, HIS NEXT
FRIEND, PETITIONER, v. JOSEPH SIDORSKI, DEFEND-
ANT.

**Employe, a Boy, Alleged to Have Been Injured by Fall From
Scaffold Upon Which He was Working—Allegations of Peti-
tioner and of Respondent Opposed to Each Other on Almost
All Points—Upon Examination of Facts it Appears That All
Employes Except One Had Been Laid Off, That the Injury
Came From a Fall After Being Laid Off, and That the
Injured Boy's Presence on the Scaffold was for Play, Not
for Work.**

For the petitioner, *Frederick I. Pelovitz.*

For the respondent, *George W. Allgair.*

The facts involved in the case are in practically every in-
stance the subject to testimony diametrically opposed to the
assertions of the proponents thereof. To begin with, the
petitioner asserts that the duties which he was hired to per-
form were mainly those of a hodcarrier—that is, he was
obliged and required to carry brick, tile and mortar up a
ladder to the scaffold erected on the outside of a building
then under the course of construction at Manville, Somerset
county, New Jersey. Although the petitioner substantiates
this story by one Stanley Kache, who likewise testified to
performing tasks identical with those claimed to have been
rendered by petitioner. I am inclined to accept the re-
spondent's contention that the petitioner was not employed in
such a capacity, but was employed primarily as a water boy
and to line up brick on the wall from the inside of the
building. This view is reached owing to the slight build of
the petitioner, which would have made it practically impos-
sible for him to have rendered the services as a hodcarrier,

and also because of the testimony of the hodcarrier who actually performed that work.

It seems that both petitioner and respondent agree that a special face brick was being used for the outside wall of the building on which petitioner was working. The respondent and numerous workmen in his employ claim that on the 13th of August, 1925, which was the day of the petitioner's injury, that there was a shortage of this special face brick. A Mr. E. M. Krug, who was the principal contractor, testified to noticing this shortage in the middle of the morning of the 13th, and of informing the respondent of that condition. Respondent thereupon contends that he went to the job in question about twelve o'clock noon, and laid off all of his men until such times as he should be able to obtain another shipment of special face brick, which it is agreed could not be obtained locally.

At this point the testimony of the petitioner and respondent again come into conflict. The respondent and his witnesses are adamant in their story as to the dismissal; the petitioner, however, as strenuously asserts that this lay-off did not take place until the afternoon of the 13th at about two o'clock. The petitioner claims that when the respondent came to the job it was about two o'clock, and that all the men were sent home with the exception of one Julius, himself, and the other boy, Stanley Kache.

The two boys insist that they were directed by respondent to remain on the job and to assist Julius in the extending of the scaffold, which would have to be enlarged so as the work might be speedily completed upon the arrival of the brick. The respondent denies such a state of affairs, and he and Julius claim that the employment of Julius arose out of Julius' complaint to the respondent on the way home, over being compelled to lose time. Respondent says that because of the dissatisfaction on the part of Julius he sent Julius to work on the scaffold. Respondent emphatically denies the story reiterated by the petitioner in this respect, and asserts that he was not near the job in the afternoon until after the accident took place. A woman residing near the

job, who tells of playing with her children on the lawn overlooking the building which was being constructed, says that the first time Sidorski came to the job in the afternoon was after the accident. Mr. E. M. Krug, who has been previously referred to, also tells of conversing with the respondent some two miles from the building at practically the same time petitioner asserted respondent was at the job.

Julius, who it is admitted was building the scaffold, says that petitioner with other boys was playing about the building in the afternoon. Julius says that Stanley Kache carried some boards up to him, but denies that he was in any manner assisted by the petitioner. The neighbor woman testified further to the effect that she saw the petitioner fall some ten feet or more from where Julius was working, and immediately thereafter saw some other boys run away from the building.

The respondent went to the job at about three o'clock and there found the petitioner in considerable pain. Respondent rushed the petitioner to the Somerset Hospital, at Somerville, New Jersey. Doctor William H. Long was called in attendance and took immediate charge of the injured boy. The petitioner and his family it seems became greatly dissatisfied with the treatment, although at the hearing they denied such to be the case. The hospital records show that' Adam Piszkowski, who brings this action for the petitioner as his next friend, signed a discharge from the hospital for the removal of the petitioner contrary to the wishes and advice of Doctor Long. The petitioner was removed to Saint Peter's Hospital in New Brunswick, New Jersey, and placed under the care of Doctor Anthony Gruessner, who some time later performed an operation on the petitioner, which resulted in practically an entire recovery on the part of the petitioner from his injuries. Doctor Gruessner was of the opinion that there would be a slight permanent loss of function owing to the broken shoulder. The respondent says that, in the first instance, he supplied the petitioner with hospital and medical care because of his sympathy aroused by the boy's condition, but that he felt in nowise legally obliged

to continue after the dissatisfaction evidenced by the petitioner and his subsequent removal to New Brunswick.

Careful consideration of the testimony obliges me to conclude that the petitioner has not told the truth as to what transpired on the 13th of August, 1925. It was natural that the respondent should lay off his men when he had no further work for them, and I cannot find any evidence satisfactorily showing that respondent re-engaged the petitioner in the afternoon for the purpose of building the scaffold. I find that the petitioner was merely playing about the building with other boys at the time of his injury, and sustained no injury while in the employment of the respondent, such being the case.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

CHARLES E. CORBIN,
*Deputy Commissioner of Compensation.*